UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RASHAUD BLANDBURG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ADVANCES LIGHTING AND ELECTRIC, INC.,<br><br>　　　　Defendant. | Case No. 2:19-cv-01519-RFB-BNW<br><br>**ORDER** |

### I.     INTRODUCTION

Before the Court is Defendant's Motion to Dismiss. ECF No. 6. For the reasons below, the Court denies the motion.

### II.    PROCEDURAL BACKGROUND

Plaintiff filed his complaint against Defendant on September 30, 2019. ECF No. 1. On October 23, 2019, the Defendant filed a Motion to Dismiss. ECF No. 6. Plaintiff filed a Response on November 1, 2019. ECF No. 8.

### III.   FACTUAL ALLEGATIONS

Plaintiff Blandburg alleges that on or about August 28, 2018 Plaintiff began working as an apprentice at Advanced Lighting and Electric, Inc. Plaintiff was the only African-American employee in that company. Soon after working for the Defendant, Nick Domschot, an employed Master Electrician, began to use racially offensive comments on a regular basis and would intentionally start conversations about his perceived racial biases.  For example, in or about October 2018, Domschot told Blandburg while discussing Kanye West's meeting with President

1  Trump that "Kanye can't be president because he is black." ECF No. 1 at 4. Plaintiff raised his
2  concerns regarding Domschot's behavior to Michael Duit, the General Manager. Duit witnessed
3  said racist comments and conversations on multiple occasions but took no action to address
4  Blandburg's complaint or remedy the racially charged work environment. In or about November
5  2019, Domschot started being more aggressive toward Plaintiff and began using the racially
6  derogatory term "nigger." Domschot even started carrying a firearm on his persons at all times.
7  Blandburg began to feel not only harassed and discriminated against, but also feared for his life.
8  Plaintiff again complained to Duit on several occasions and Blandburg specifically requested that
9  he no longer work with Domschot because of the experienced racial harassment and
10 discrimination. Duit failed to take any action.

11 Plaintiff is a disabled veteran and suffers from service-related Post-Traumatic Stress
12 Disorder ("PTSD"), which Defendant knew prior to hiring Plaintiff. Plaintiff provided Defendant
13 an Americans with Disabilities Act accommodations request from his therapist at the U.S.
14 Department of Veteran Affairs. The accommodations requested that Plaintiff be permitted time off
15 to attend appointments for therapy, as necessary. On multiple occasions, Defendant denied
16 Plaintiff said accommodations and forced him to work when he had scheduled necessary
17 appointments. The hostile work environment, racial discrimination and harassment, and
18 Defendant's refusal to accommodate Plaintiff's disability was so severe and pervasive that Plaintiff
19 had no other choice but to resign from his position on December 28, 2018.

20 Plaintiff filed a complaint in September 2019 against Defendant alleging: (1)
21 discrimination pursuant to NRS 613.330 et. seq., Americans with Disabilities Act, 42 U.S.C. ch.
22 126 § 12101 et seq., Title VII, 42 U.S.C. § 2000e et. Seq; (2) retaliation under 42 U.S.C. § 2000e-
23 3 and NRS 613.340; (3) violation of Americans with Disabilities Act, 42 U.S.C. § 12101; and (4)
24 violation of the Civil Rights Act of 1871, §1981.

**IV.   LEGAL STANDARD**

27 An initial pleading must contain "a short and plain statement of the claim showing that the
28 pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure

to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

**V. DISCUSSION**

    **a. Exhaustion of State Claims**

Defendant argues that because Plaintiff failed to file with the Nevada Equal Right Commission ("NERC"), Plaintiff's first two state claims are untimely and thus should be dismissed. Plaintiff argues that a "work-sharing" agreement between EEOC and the NERC allows an individual filing with one entity to constitute filing with both entities and as such Plaintiff fully exhausted his administrative remedies by filing a claim with the EEOC. This Court agrees with the Plaintiff.

Any claims arising under Nevada employment antidiscrimination statutes must be administratively exhausted prior to seeking redress in the district courts. Palmer v. State Gaming Control Bd., 106 Nev. 151 (Nev. 1990). "An employee claiming discrimination under NRS

613.420 is obligated to file a claim with NERC and to have that agency adjudicate the claim before it can properly be brought in district court." Id. A work-sharing agreement between EEOC and NERC allows for an exhaustion of remedies with either agencies and constitutes and an exhaustion with both entities. See Cooper v. Eighth Judicial Dist. Court in & for Cty. of Clark, No. 74907, 2018 WL 3222743, at *2 (Nev. App. June 18, 2018); Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 46 (2019) ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other."); Nickler v. Clark Cty., No. 19-15761, 2020 WL 710229, at *1 (9th Cir. Feb. 12, 2020) (citing Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172, 1174-75 (9th Cir. 1999)) ("On appeal, [Plaintiff] alleges that there is a worksharing agreement between the EEOC and the Nevada Equal Rights Commission that would render her claims timely. There are sufficient indicia in our caselaw that such an agreement exists and would be relevant to the timeliness of the claims."). Additionally, the statute governing the NERC suggests that there is indeed some cooperation between that body and the EEOC. Nevada Revised Statutes § 233.160(1) states that a complaint alleging unlawful discrimination "is timely if it is filed with an appropriate federal agency within that period." Further, it states, "A complainant shall not file a complaint with the Commission if any other state or federal administrative body or officer which has comparable jurisdiction to adjudicate complaints of discriminatory practices has made a decision upon a complaint based upon the same facts and legal theory." Nev. Rev. Stat. § 233.160(1).

Here, Plaintiff alleges he resigned from his position in December 2018 and on January 18, 2019, he initiated the process of filing a Charge of Discrimination against his employer with the EEOC. And on or about June 5, 2019, Plaintiff received a Notice of Right to Sue from the EEOC. Accordingly, because Plaintiff filed a claim with the EEOC within a month of resignation, this constitutes a filing with the NERC; therefore, Plaintiff's state claims are timely.

### b. Discrimination under Title VII

Defendant argues that Plaintiff has not provided sufficient allegations to support the elements of a prima facie case of discrimination based on race and the resulting hostile work

- 14 -

environment. This Court disagrees.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . " 42 U.S.C. § 2000e-2(a)(1) (2005). To establish a prima facie case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The Ninth Circuit defines "adverse employment action" as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242–43 (9th Cir. 2000). An employment action is adverse if it "materially affects the compensation, terms, conditions or privileges of employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

Based on facts alleged, this Court concludes that Plaintiff has stated a claim under Title VII for discrimination on the basis of race. Plaintiff is African-American and alleges he is qualified to do his job. Plaintiff contends he was harassed and discriminated against on the job and despite reporting this treatment to the General Manager on many occasions, no remedial action was taken. Plaintiff contends that no other white employees were subjected to the same treatment. Consequently, Plaintiff resigned due to the intolerable work environment. Defendant contends that because Plaintiff resigned, he fails to allege adverse employment action. However, Plaintiff contends that he was constructively discharged, which can be an adverse employment action for the purposes of established a Title VII claim. See Jordan v. Clark, 847 F.2d 1368, 1377 (9th Cir. 1988); Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1110 (9th Cir.1998)( noting constructive discharge occurs when an employer intentionally creates, or knowingly permits, conditions so intolerable that they effectively force an employee to resign). Accordingly, this Court finds that Plaintiff pleads sufficient facts for a prima facie case of Title VII discrimination.

- 14 -

### c. Retaliation Claim

Defendant contends that Plaintiff fails to allege facts showing Defendant retaliated against him. This Court disagrees.

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal a causal link between the protected activity and the adverse employment action. Dawson v. Entek Intern, 630 F.3d 928, 936 (9th Cir. 2011). But-for causation is required to satisfy the third prong. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Southwestern Med. Ctr. V. Nassar, 133 S.Ct. 2517, 2533 (2013).

Protected activities under Title VII include opposing allegedly discriminatory acts by one's employer. Id.; 42 U.S.C. 2000e-3(a). They also include making informal complaints to one's supervisor. Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). "When an employee protests the actions of a supervisor such opposition is a protected activity." Trent v. Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994). Further, if an employee communicates to his employer a reasonable belief the employer has engaged in a form of employment discrimination, that communication constitutes opposition to the activity. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009).

Here, Plaintiff first reported the alleged discriminatory conduct to the Duit, the General Manager, and no action was taken to remediate the work environment. Plaintiff alleges that Domschot then began using the racially derogatory term "nigger" and he started carrying a firearm at all times. Due to the intolerable work environment and despite numerous complaints, Plaintiff was effectively forced to resign from his position. These alleged facts demonstrate that the Defendant's employees engaged in retaliatory misconduct against Plaintiff because of his engagement in a protected activity. Ray v. Henderson, 217 F.3d 1234, 1234-43 (9th Cir. 2000) ("[A]ny adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."). Therefore, this Court finds that

Plaintiff sufficiently alleges facts for his retaliation claim.

**d. Discrimination under the ADA**

Defendant alleges that Plaintiff failed to show that he was not reasonably accommodated for his therapy appoints; therefore, Blandburg fails to state a claim for discrimination under the Americans with Disability Act ("ADA"). This Court disagrees.

To establish a prima facie case under the Americans with Disabilities Act ("ADA"), a plaintiff must first demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003)). Under the ADA, "[t]he term 'disability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 563 (1999) (quoting 42 U.S.C. § 12102(1)).

Contrary to Defendant's claim, Plaintiff alleges: (1) he suffers from PTSD, a disability within the meaning of the ADA; (2) he provided an ADA accommodations request for therapy on several occasions, which were denied; and (3) he resigned given the intolerable work environment. Therefore, this Court finds that Plaintiff sufficiently alleged facts for his claim of discrimination under the ADA.

Accordingly, given the reasons above, this Court denies Defendant's motion to dismiss.

///

///

///

///

## VI. CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF No. 6) is DISMISSED.

DATED: September 29, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**